UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN FREEDOM DEFENSE  :
INITIATIVE,   et. al.,    :
                          :
       Plaintiffs,        :
                          :
    v.                    :   Civil Action No. 15-1038 (GK)
                          :
WMATA, et. al.,           :
                          :
       Defendants.        :
_____:

## MEMORANDUM OPINION

Plaintiffs, American Freedom Defense Initiative, Pamela Geller and Robert Spencer, (collectively, "Plaintiffs," or "AFDI"), bring this action against the Washington Metropolitan Area Transit Authority, et. al., (collectively, "Defendants," or "WMATA"), alleging violations of their First Amendment rights. This dispute arose when Plaintiffs submitted an ad to WMATA to display on its property. After Plaintiffs submitted the ad, WMATA changed its policy to close its advertising space to all "issue-oriented" advertising. WMATA then rejected Plaintiffs' ad under the new policy. Plaintiffs claim that WMATA's denial is a prior restraint on Plaintiffs' speech in violation of their First Amendment rights.

1

This matter is before the Court on the Parties' Cross-Motions for Summary Judgment [Dkt. Nos. 19, 20]. Upon consideration of the Motions, Oppositions [Dkt. Nos. 20, 25], and Replies [Dkt. Nos. 25, 29], and the entire record herein, and for the reasons stated below, Defendants' Motion for Summary Judgment is **granted,** and Plaintiffs' Motion for Summary Judgment is **denied.**

## I.   BACKGROUND

### A. Factual Background

Plaintiff AFDI is a nonprofit organization incorporated under the laws of New Hampshire. Compl. ¶ 7 [Dkt. No. 1]. Plaintiff Pamela Geller is the President of AFDI. Id. ¶ 10. Plaintiff Robert Spencer is the Vice President of AFDI. Id. ¶ 11. AFDI is dedicated to promoting and protecting the right to freedom of speech under the First Amendment. Plaintiffs' Statement of Material Facts ¶¶ 3-4 ("Pls.' SMF") [Dkt. No. 20-1]. Plaintiffs frequently purchase advertising space on transit authority property in major cities throughout the United States to run ads promoting its message on current events and political issues. Pls.' SMF ¶¶ 5-6. Plaintiffs have also frequently litigated transit authorities' rejection of those ads.

WMATA is a government agency that was established through a congressionally approved interstate compact to provide public

2

transportation in the Washington, D.C. metropolitan area. See D.C. Code § 9-1107.01(80). WMATA operates the Metrorail and Metrobus systems in the Washington, D.C. metropolitan area. Defendants' Motion for Summary Judgment at 3 ("Mot.") [Dkt. No. 19-1].

WMATA leases advertising space on its buses and on free-standing dioramas in its subway stations. Pls.' SMF ¶ 9. Before May 28, 2015, "WMATA had a policy of accepting a broad range of issue-oriented ads." Mot. at 5. WMATA leased advertising space for issue-oriented and political advertisements under its earlier policy. Id. ¶¶ 29-30; Defendant's Reply to Plaintiff's Statement of Material Facts ¶¶ 29-30 (Defs.' Rep. to Pls.' SMF") [Dkt. No. 25-1].

On or about May 20, 2015, Plaintiffs submitted two proposed ads to WMATA's advertising agent for display on WMATA's buses and free-standing dioramas. Pls.' SMF ¶ 23. The proposed ads appear as follows:



Id. ¶ 24.



Id. ¶ 25.

On May 22, 2015, WMATA's advertising agent responded to Plaintiffs' submission stating, "The copy has been submitted to the transit authority. We are also looking into available inventory. I will let you know about both as soon as I hear back." Id. ¶ 26-27.

On May 28, 2015, WMATA's Board of Directors unanimously adopted a motion ("May 28 Moratorium" or "Restriction") closing "WMATA's advertising space to any and all issue-oriented advertising, included but not limited to, political, religious, and advocacy advertising until the end of the calendar year." Id. ¶¶ 44, 50. The motion also stated that the Board would "review what role such issue-oriented advertising has in WMATA's mission

4

. . .and will seek public comment and participation for its consideration before making a final policy determination." Bowersox Decl., Ex. A [Dkt. No. 19-3].

WMATA rejected Plaintiffs' ads after the May 28 Moratorium was enacted. Pls.' SMF ¶¶ 59-60; Defs.' Rep. to Pls.' SMF ¶¶ 59-60.

On November 19, 2015, the WMATA Board of Directors adopted Resolution No. 2015-55 closing "WMATA's Commercial Advertising Space to issue-oriented ads, including political, religious, and advocacy ads. . ." Id., Ex. B. The Resolution included further "Guidelines Governing Commercial Advertising," which specified that,

> 9. Advertisements intended to influence members of the public regarding an issue on which there are varying opinions are prohibited. . .11. Advertisements that support or oppose any political party or candidate are prohibited. 12. Advertisements that support or oppose any religion, religious practice or belief are prohibited. . . [and] 13. Advertisements that support or oppose an industry position or industry goal without any direct commercial benefit to the advertisers are prohibited.

Id.

**B. Procedural Background**

On July 1, 2015, Plaintiffs filed their Complaint. On August 5, 2016, Defendants filed their Motion for Summary Judgment. On

September 5, 2016, Plaintiffs filed their Cross-Motion for Summary Judgment ("Cross-Mot.") [Dkt. No. 20]. On October 3, 2016, Defendants filed their Opposition to Plaintiffs' Cross-Motion for Summary Judgment and Reply (Defs.' Rep.") [Dkt. No. 25]. On October 31, 2016, Plaintiffs filed their Reply ("Pls.' Rep.") [Dkt. No. 29].

## II. STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016). A dispute of material fact is "'genuine'. . .if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In a summary judgment motion, the moving party has the responsibility for "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477

U.S. at 323 (internal quotation omitted).

The court should view the evidence in favor of the nonmoving party and draw all reasonable inferences in favor of that party making credibility determinations or weighing the evidence, Johnson, 823 F.3d at 705. "However, the nonmoving party may not rely solely on allegations or conclusory statements. Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor." Krishnan v. Foxx, 177 F. Supp. 3d 496, 503 (D.D.C. 2016) (citing Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999)).

### III. ANALYSIS

#### A. Forum Analysis

The Parties do not dispute that Plaintiffs' ads are protected speech. Courts analyze restrictions on protected speech on government property for compliance with the First Amendment under the public forum doctrine. Initiative & Referendum Inst. v. U.S. Postal Serv., 685 F.3d 1066, 1070 (D.C. Cir. 2012). Under the public forum doctrine, government property is divided into three categories: 1) traditional public forums, 2) designated public forums, and 3) nonpublic forums. Id. "[T]he extent to which the Government can control access [to its property] depends on the nature of the relevant forum. Cornelius v. NAACP Legal Def. & Educ.

7

Fund, Inc., 473 U.S. 788, 800 (1985).

Traditional public forums, such as streets and parks, "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Id. (quoting Hague v. CIO, 307 U.S. 496, 515 (1939)) (internal quotation marks omitted).

A designated public forum is government property "which the state has opened for use by the public as a place for expressive activity." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983) "The Constitution forbids a state to enforce certain exclusions from a [designated public forum] even if it was not required to create the forum in the first place." Id. "[W]hen the Government has intentionally designated a place or means of communication as a public forum speakers cannot be excluded without a compelling governmental interest." Cornelius, 473 U.S. at 800.

A nonpublic forum "is not by tradition or designation a forum for public communication," Perry, 460 U.S. at 46, and the First Amendment does not guarantee unlimited expression in this forum. Rather, the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression

merely because public officials oppose the speaker's view." Id. Access to a nonpublic forum can be restricted as long as the restrictions are viewpoint neutral and reasonable. Cornelius, 473 U.S. at 800.

Plaintiffs contend that WMATA's advertising space was a designated public forum at the time they submitted their ads. Cross-Mot. at 13-20. WMATA does not dispute this assertion. See Defs.' Rep. at 3-4. Plaintiffs argue that this Court should therefore analyze WMATA's rejection of AFDI's ads by using the higher standard that applies to designated public forums. WMATA contends that its advertising space was a nonpublic forum when it rejected AFDI's ad, and therefore the rejection should be analyzed under the standard that applies to nonpublic forums. This Court agrees with WMATA. WMATA's new guidelines must therefore be viewpoint neutral and reasonable. Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009).

### 1. WMATA's Restriction is Viewpoint Neutral

The parties do not dispute that the government has a right to convert a designated public forum into a nonpublic forum. See Mot. at 7-8; Cross-Mot. at 17-18; Pls.' Rep. at 10; Cornelius, 473 U.S. at 802 ("the government is not required to indefinitely retain the open character of [a] facility"). However, Plaintiffs argue that

9

WMATA's decision to close its property to issue-oriented advertising was improper because the change specifically targeted Plaintiffs' ads.[1] See Pls.' Rep. at 10.

Needless to say, it would be unconstitutional for WMATA to close its property to issue-oriented advertising "merely as a ruse for impermissible viewpoint discrimination." See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist., 508 U.S. 384, 394 (1993) ("[T]the First Amendment forbids the government to regulate speech

---

1   To the extent that Plaintiff brings their claims under WMATA's pre-May 28, 2015 policy which permitted the publication of issue-oriented ads on WMATA's property, WMATA's May 28 Moratorium mooted any such claim. See AFDI v. MTA, 815 F.3d 105 (2d. Cir. 2016). In AFDI, the same Plaintiffs sued the New York Metropolitan Transit Authority for refusing to publish a similarly political ad. Id. After the district court granted Plaintiffs' Motion for a preliminary injunction, the MTA changed its advertising standards to convert MTA's property from a designated public forum to a nonpublic forum. Id. The district court held that the MTA's new policy mooted Plaintiffs' claims, and the Second Circuit affirmed. Id.

The AFDI case is consistent with the law in our Circuit. See Initiative & Referendum Inst., 685 F.3d at 1074 ("[a] challenge to a superseded law is rendered moot unless there is evidence indicating that the challenged law likely will be reenacted"). Even considered in the light most favorable to Plaintiffs, they have not presented any facts suggesting that WMATA is likely to reverse its regulation. On the contrary, WMATA's May 28 Moratorium was made permanent on November 19, 2015 and has remained in effect ever since. Plaintiffs' argument that WMATA's financial difficulties will force it to redesignate its property as a designated public forum are nothing more than speculation.

in ways that favor some viewpoints or ideas at the expense of others") (internal quotations omitted); Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 77 (1st Cir. 2004).

WMATA argues that its reasons for closing its advertising space to issue oriented ads were "that controversial ads were hurting WMATA's reputation with the community; ensuring employee morale, which was adversely affected by constant exposure to messages they might find offensive; minimizing vandalism directed at issue-oriented ads; and reducing the administrative burden on WMATA, its outside advertising management company, and its counsel, who were forced to review controversial ads to determine if they complied with the former advertising policy." Defs.' Rep. at 10 (citing Bowersox Depo at 41:6-48:13).

Plaintiffs argue that the timing of WMATA's May 28 Moratorium shows that it was targeted at Plaintiffs' ads. Specifically, Plaintiffs allege that because their ad was pending when WMATA took what they characterize as an "unprecedented and hasty action of passing a 'moratorium' which created a sea change in the way WMATA had been doing business for decades," the new guidelines must have been "timed so as to prevent the display of Plaintiffs' advertisements." Pls.' Rep. at 10 (emphasis in original).

However, Defendants cite many cases in which the government

11

changed its guidelines during the pendency of a lawsuit and the court did not infer viewpoint discrimination from such timing. For example, in Ridley, a case which Plaintiffs cite as well, the defendant agreed to run an ad in April 2002, mooting a pending appeal over the refusal to publish the ad, rejected an additional ad in August 2002, and changed its guidelines in January 2003. Ridley, 390 F.3d at 74-75. Despite the timing of the changed guidelines, the court found "no evidence that the 2003 changes were adopted as a mere pretext to reject plaintiff's advertisements." Id. at 77.

In Ridley, the court did find that one of the defendants had engaged in viewpoint discrimination based on statements by some of its officials. Id. at 87-88. Here, Plaintiffs rely on a statement by Defendants' representative that Plaintiffs' ad was the "straw that broke the camel's back" and pushed WMATA to change its guidelines. Even in the light most favorable to Plaintiffs, that statement does not support an inference that WMATA's guidelines were revised for the purpose of rejecting Plaintiffs' ads. Rather, the statement suggests that WMATA had previously been considering a policy change for other reasons and only saw Plaintiffs' ad as additional support for their previous thinking.

Plaintiffs argue that because WMATA published issue-oriented ads in the past, the changes to its guidelines and subsequent rejection of Plaintiffs' ads can only be due to a preference for other controversial messages over Plaintiffs' message. Cross-Mot. at 25-26. However, having established that WMATA was permitted to change its guidelines, the relevant inquiry is not whether WMATA allowed other controversial messages before the May 28 Moratorium, but whether WMATA has consistently enforced the new guidelines since they were enacted. Plaintiffs have submitted no evidence that the new guidelines have been inconsistently enforced.[2]

### 2. WMATA's Restriction is Reasonable

"A regulation is reasonable if it is consistent with the government's legitimate interest in maintaining the property for its dedicated use." Initiative & Referendum Inst., 685 F.3d at 1073 (citing Perry, 460 U.S. at 50-51). A restriction "need only be reasonable; it need not be the most reasonable or the only reasonable limitation." Cornelius, 473 U.S. at 808 (emphasis in

---

2  Plaintiffs' argument that the government may not "discriminate" against non-commercial ads in favor of commercial ads, see Pls.' Rep. at 12, is unsupported by the case it cites, Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 514 (1981), and runs counter to the holdings of many of the other cases cited above upholding guidelines that prohibit political or issue-oriented advertising. See e.g. SMART, 698 F.3d 885.

13

original). There is no "requirement that the restriction be narrowly tailored or that the Government's interest be compelling," Cornelius, 473 U.S. at 809, especially because the nonpublic forum is "rarely []the only means of contact with a particular audience." Id.

Plaintiffs respond that "it is unreasonable to argue that an ad displayed on the outside of a bus traveling through Washington, D.C.- a bustling city in which passengers and outside observers are besieged by a cacophony of expressive, and quite often political and controversial, media- would somehow interfere with the operation of WMATA's bus system." Cross-Mot. at 28.

Yet, Defendants explained how such ads have interfered with WMATA's operations. For example, WMATA stated that controversial ads had led to vandalism directed at issue-oriented ads and an administrative burden on WMATA's advertising agent and counsel who were forced to review them to determine if they complied with the former advertising policy. Courts have consistently held that restrictions on issue-oriented advertising on public transportation for reasons such as these are reasonable. This Court finds WMATA's restrictions to be reasonable as well. See Lehman v. City of Shaker Heights, 418 U.S. 298, 304 (1974) ("the managerial decision to limit car card space to innocuous and less

14

controversial commercial and service oriented advertising does not rise to the dignity of a First Amendment violation"); SMART, 698 F.3d at 892-893.

### B. WMATA's Restriction Is not Unconstitutionally Vague

Plaintiffs argue that the May 28 Moratorium and subsequent guidelines are "hopelessly vague," and therefore violate the First Amendment by giving "officials [] unbridled discretion over [the] forum's use." Cross-Mot. at 16 (quoting Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 553 (1975)). A law or guideline limiting free speech must have "narrow, objective, and definite standards to guide the licensing authority." Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 151 (1969).

WMATA's advertising guidelines include sufficiently definite standards regarding what constitutes "issue-oriented ads." The guidelines specify that the Restriction is "including but not limited to, political, religious and advocacy advertising." Bowersox Decl., Ex. B. The guidelines further elaborate each of the modifiers in that part of the Restriction. For example, the guidelines state that "[a]dvertisements that promote or oppose any political party or candidate are prohibited;" and that "[a]dvertisements that promote or oppose any religion, religious practice or belief are prohibited; and that "[a]dvertisements

15

intended to influence members of the public regarding an issue on which there are varying opinions are prohibited," among other specifications. Id.

Thus, WMATA's Restriction is clearly not unconstitutionally vague. See SMART, 698 F.3d 885 (held that a restriction on "political or political campaign advertising" was "not so vague or ambiguous that a person could not readily identify the applicable standard" and therefore upheld another transit authority's rejection of another one of plaintiffs' ads).

Defendants' Motion for Summary Judgment is therefore granted and Plaintiffs' Cross-Motion for Summary Judgment is denied.[3]

---

3 Plaintiffs seek nominal damages under 42 U.S.C. § 1983. Defendants argue that WMATA is immune from suit under Section 1983, and that Plaintiffs are therefore not entitled to nominal damages. Because this Court finds that Defendants are not liable, Plaintiffs are not entitled to nominal damages and the Court need not reach the issue of whether WMATA posseses sovereign immunity.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment shall be **granted;** and Plaintiffs' Cross-Motion for Summary Judgment shall be **denied.** An Order shall accompany this Memorandum Opinion.

March 28, 2017

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF