UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FREEDOM DEFENSE INITIATIVE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, et al., <br><br> Defendants. | Civil Action No. 15-1038 (JDB) |

## MEMORANDUM OPINION

On October 7, 2020, defendants served plaintiffs American Freedom Defense Initiative ("AFDI"), Pamela Geller, and Robert Spencer with deposition notices. Plaintiffs now move for a protective order prohibiting those depositions from taking place on the grounds that they necessarily fall outside the scope of the limited discovery authorized by the Court. For the following reasons, the Court will grant plaintiffs' motion in part and deny it in part.

## Background

Plaintiffs filed this action in 2015 alleging that Washington Metropolitan Area Transit Authority ("WMATA") and its CEO violated plaintiffs' First Amendment rights by rejecting their request to run two advertisements on WMATA's Metrobuses. Compl. [ECF No. 1] at 1–2. The advertisements read "SUPPORT FREE SPEECH" and "depict a turbaned, bearded, sword-wielding man who is apparently meant to be the Prophet Muhammad." Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth., 901 F.3d 356, 360 (D.C. Cir. 2018). According to plaintiffs, the ads "make the point that the First Amendment will not yield to Sharia-adherent Islamists who want to enforce so-called blasphemy laws here in the United States." Compl. at 6.

In 2017, Judge Kessler granted defendants summary judgment, holding that WMATA's Guideline 9—which prohibits "[a]dvertisements intended to influence members of the public regarding an issue on which there are varying opinions"—provided a reasonable and viewpoint-neutral basis for rejecting plaintiffs' ads. See Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth., 245 F. Supp. 3d 205, 210–13 (D.D.C. 2017).

While plaintiffs' appeal was pending, the Supreme Court issued its decision in Minnesota Voters Alliance v. Mansky, 138 S. Ct. 1876 (2018), adding another layer of analysis to the question whether a speech restriction in a nonpublic forum is "reasonable." Specifically, the Court held that such a restriction must be "capable of reasoned application"—meaning there must be "objective, workable standards" to guide a government official in determining what speech that restriction prohibits or permits. Id. at 1891–92. In resolving plaintiffs' appeal, the D.C. Circuit agreed with Judge Kessler that Guideline 9 was viewpoint-neutral and reasonable given WMATA's legitimate interest in avoiding controversy. Am. Freedom Def. Initiative, 901 F.3d at 368–71. But the court remanded for further consideration, in light of Mansky, whether Guideline 9 or any other Guideline that WMATA might invoke to reject plaintiffs' ads is "capable of reasoned application." Id. at 373. The court also stated that AFDI should be allowed to "supplement the record," and that "information on how [Guideline 9] has been applied" since its enactment "would certainly" inform the Mansky analysis. Id.

On remand, this Court ordered the parties to confer and file a joint status report regarding further proceedings. Min. Order (Jan. 17, 2019). Defendants identified Guideline 12, which prohibits "[a]dvertisements that promote or oppose any religion, religious practice or belief," as an additional basis for rejecting plaintiffs' ads. Joint Status Report (June 19, 2020) [ECF No. 51] at 3–4; see also WMATA Guidelines Governing Commercial Advertising,

www.wmata.com/about/records/public_docs/upload/Advertising_Guidelines.pdf (last accessed Nov. 27, 2020). In accordance with the parties' joint request, the Court authorized limited discovery of "information on how WMATA has applied its Guideline 9 and Guideline 12 since it adopted them in 2015." Scheduling Order (June 25, 2020) [ECF No. 52] at 1.[1]

The parties thereafter served their respective discovery requests. Plaintiffs objected to defendants' requests as outside the scope of the Court's limited discovery order, but following a meet-and-confer, agreed to produce certain documents relating to identical or "similar" ads that plaintiffs had submitted to other government agencies. See Pls.' Mot. for Protective Order ("Pls.' Mot.") [ECF No. 56] at 4. Plaintiffs then produced a series of emails relating to an ad that ran on the New York City transit authority's ("MTA") property in 2017. Id.

On October 7, 2020, defendants served notices of deposition on plaintiffs AFDI, Geller, and Spencer. Id. at 5. The topics of the depositions were:

1. Mission, organization, staffing and funding of AFDI.

2. Contest hosted by AFDI in which the drawing that underlies the advertisements at issue in this action was submitted.

3. Preparation of Plaintiffs' September 10, 2020 responses to Defendants' Interrogatories and Defendants' Requests for Production of Documents, including searches conducted, documents collected, and selection of information and documents for production, as well as the location of those documents.

4. AFDI's communications with [MTA] concerning the advertisement for the film Can't We Talk About This and AFDI's actions concerning that advertisement.

5. AFDI's communications with [MTA] regarding the advertisement at issue in AFDI v. MTA, No. 15-1997 (2d Cir.) and AFDI's actions concerning that advertisement.

---

[1] The Court did not adopt the parties' second request for discovery "about the bases for WMATA's determination that Guideline 12 applies to AFDI's ads at issue in this action." Compare Scheduling Order (June 25, 2020), with Joint Status Report (June 19, 2020) at 3–4. The parties do not challenge this decision.

Def.'s Notice of 30(b)(6) Dep. of AFDI ("Deposition Notice"), Yerushalmi Decl. Ex. 5 [ECF No. 56-1] at 40.  Plaintiffs objected to the depositions as outside the scope of discovery, and when the parties could not come to an agreement, plaintiffs moved for a protective order prohibiting the depositions altogether.  See Wolverton Decl. [ECF No. 57-1] ¶ 7; Yerushalmi Decl. ¶¶ 11–12.  That motion is now fully briefed and ripe for consideration.

## Legal Standard

Under Federal Rule of Civil Procedure 26(c), a party may move for a protective order "on matters relating to a deposition" to protect against "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  A district court possesses "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also United States v. Microsoft Corp., 165 F. 3d 952, 959 (D.C. Cir. 1999).  The party moving for a protective order bears the burden of showing "good cause" for the order under Rule 26(c).  Alexander v. FBI, 186 F.R.D. 60, 64 (D.D.C. 1998).  To evaluate whether such a showing has been made, "courts apply a balancing test, weighing the movant's proffer of harm against the adversary's significant interest in preparing for trial."  Doe v. Dist. of Columbia, 230 F.R.D. 47, 50 (D.D.C. 2005) (internal quotation marks omitted); see also Burka v. Dep't of Health and Human Servs., 87 F. 3d 508, 517 (D.C. Cir. 1996).  This test requires a court to assess whether the information sought is relevant.  See Alexander, 186 F.R.D. at 65–66.

The definition of "relevance" is "broadly construed," Food Lion, Inc. v. United Food and Commercial Workers Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997), and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on a party's claim or defense," English v. Wash. Metro. Area Transit Auth., 323 F.R.D. 1, 17 (D.D.C. 2017) (quotations omitted).  Discovery of "information that has no conceivable bearing on the case" is

not allowed. Food Lion, 103 F.3d at 1012. Although a "complete prohibition of a deposition [is] an 'extraordinary measure which should be resorted to only in rare occasions,'" Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001) (quoting Alexander, 186 F.R.D. at 75), courts more often bar depositions on irrelevant topics, see, e.g., Cobell v. Norton, 226 F.R.D. 67, 83 (D.D.C. 2005) ("[T]his Court may, in its discretion, limit the scope of individual depositions in order to provide that information produced is likely to be relevant."). Where only "limited discovery [has been] ordered by the Court," depositions on topics "outside the scope" of that order are not permitted. Barnes v. Dist. of Columbia, 281 F.R.D. 53, 57 (D.D.C. 2012).

## Analysis

Plaintiffs argue that the proposed deposition topics are irrelevant and outside the scope of the Court's order limiting discovery "to information on how WMATA has applied its Guideline 9 and Guideline 12 since it adopted them in 2015." Pls.' Mot. at 5–6 (quoting Scheduling Order (June 25, 2020)). According to plaintiffs, that information, and the answer to the only question on remand—whether WMATA's guidelines are "capable of reasoned application" under Mansky—"lies solely in facts within the custody and control of WMATA." Id. at 6. Defendants disagree and assert that "information from the Plaintiffs about how other transit authority advertising guidelines have applied to [similar] AFDI advertisements" and "the nature of AFDI and its advocacy" are indeed relevant to the ultimate legal issue whether WMATA reasonably applied its guidelines.[2] Defs.' Opp'n to Pls.' Mot. for Protective Order ("Defs.' Opp'n") [ECF No. 57] at 1,

---

[2] Defendants also argue that plaintiffs' motion was untimely. See Defs.' Opp'n at 8. Defendants served their notices of deposition on October 7, 2020. Yerushalmi Decl. ¶ 10. Plaintiffs informed defendants of their objections to these depositions at a meet-and-confer on October 12. Id. ¶¶ 11–12; Wolverton Decl. ¶ 7. Plaintiffs' counsel attests that he specifically informed defense counsel he would move for a protective order, whereas defense counsel only recalls plaintiffs' counsel stating that he would "seek relief from the Court." Compare Yerushalmi Decl. ¶ 12, with Wolverton Decl. ¶ 7. Plaintiffs did not ultimately move for a protective order until October 29, 2020—the day before the first deposition was scheduled to take place—and thus defendants assert that plaintiffs' motion for a protective order is untimely. See Defs.' Opp'n at 8. Plaintiffs do not offer an excuse for their delay, and the Court recognizes that plaintiffs' decision to wait until the last minute to seek relief caused defense counsel to prepare for a deposition

7–8.  The Court will address each deposition topic in turn, albeit in a different order than the topics appear in the deposition notice.

**1.   Deposition Topics Nos. 4 & 5: MTA's Consideration of Similar AFDI Ads**

The fourth and fifth deposition topics—concerning AFDI's submissions of similar ads to MTA—do not square with the Court's order limiting discovery to "information on how WMATA has applied its Guideline 9 and Guideline 12."  Scheduling Order (June 25, 2020) at 1 (emphasis added).  Defendants make no real attempt to tie these requests to the language of the Court's previous order, and the topics plainly address how MTA has applied its own advertising restrictions to plaintiffs' ad submissions.

Nor are these topics otherwise relevant to the Mansky analysis.  Defendants argue that "MTA's decisions on these analogous advertisements and AFDI's actions" in revising or withdrawing their submissions are pertinent, in part, because "AFDI's actions may have been based on conclusions that MTA's application of its advertising guidelines was reasonable." Defs.' Opp'n at 6.  How a different transit authority applied its own guidelines to different ads and whether plaintiffs thought that application was reasonable, however, does not inform whether WMATA has provided "objective, workable standards" to guide its officials in applying Guidelines 9 or 12.  Mansky, 138 S. Ct. at 1891.  No evidence has been offered that MTA's guidelines are the same or even similar to WMATA's or that any court has found MTA's rules "capable of reasoned application," such that they might serve as a useful benchmark.

Defendants nonetheless argue that other states' laws are relevant because the Supreme

---

that did not then take place.  Wolverton Decl. ¶ 8–11.  However, because defendants were on notice that plaintiffs would seek some measure of relief and plaintiffs did file their motion in advance of the scheduled depositions, the Court does not find the motion untimely.  Cf. Bosh v. Cherokee Cty. Governmental Bldg. Auth., 2016 WL 128518, at *1 (E.D. Okla. Jan. 12, 2016) ("Failure to seek a protective order in advance of the deposition waives any objections.").

Court recognized in Mansky that analogous laws in California and Texas used "more lucid terms" than the Minnesota law at issue there. See id.; Defs.' Opp'n at 6. However, the Mansky Court expressly declined to rule on whether those other laws were indeed constitutional and referenced them only in dicta to highlight how unworkable Minnesota's standards were. See Mansky, 138 S. Ct. at 1891. Instead, the Mansky Court limited its analysis to how the government had defined the terms in Minnesota's law and the government's "official guidance and representations to [the] Court" about how that law had been or would be applied in certain cases. See id. at 1888. Nowhere did the Mansky Court imply that information about how other states had applied different laws in different situations would shed light on whether Minnesota had applied its own law in an objective and workable way. Nor have courts interpreting Mansky suggested anything of the kind. See Zukerman v. U.S. Postal Serv., 961 F.3d 431, 449–52 (D.C. Cir. 2020); Archdiocese of Wash. v. Wash. Metro. Trans. Auth., 897 F.3d 314, 330–31 (D.C. Cir. 2018); see also Am. Freedom Def. Initiative v. Suburban Mobility Auth. For Reg'l Transp. (SMART), 978 F.3d 481, 494–98 (6th Cir. 2020); Ctr. for Investigative Reporting v. Se. Penn. Transp. Auth., 975 F.3d 300, 314–17 (3d Cir. 2020). The fourth and fifth deposition topics, therefore, are not within the scope of the limited discovery authorized on remand.

    **2. Deposition Topics Nos. 1 & 2: AFDI and AFDI's Drawing Contest**

The first and second topics—concerning AFDI itself and AFDI's selection of the drawing featured in the ads submitted to WMATA—present a more difficult call. Defendants contend that "the nature of AFDI and its advocacy" is relevant to how WMATA applied its guidelines to plaintiffs' advertisements, in part because "the advertisements include AFDI's logo." Defs.' Opp'n at 8. Plaintiffs broadly deny that any of the proposed depositions could generate relevant evidence, but do not specifically contest the relevance of this particular information in their reply.

The Court understands plaintiffs' argument that, strictly speaking, these topics do not contain "information on how WMATA has applied its Guideline 9 and Guideline 12." Scheduling Order (June 25, 2020) at 1. For if WMATA did not possess this information when WMATA rejected plaintiffs' advertisements under its guidelines, then it is not technically "information on how WMATA has applied" either guideline. Nevertheless, the evidence that WMATA seeks—which might inform the <u>reasonableness</u> of "how WMATA has applied" its guidelines—is sufficiently related to the scope of the Court's original discovery order and sufficiently relevant to the <u>Mansky</u> analysis that the Court will allow depositions on these topics to proceed. Defendants have rejected plaintiffs' ads on the basis that the ads "promote or oppose [a] religion, religious practice, or belief." <u>See</u> Joint Status Report (June 19, 2020) at 3. Information about the design of plaintiffs' ads and the nature of plaintiffs' organization and advocacy may, for example, be relevant to defendants' argument that these ads were in fact religiously motivated and, thus, that WMATA's application of Guideline 12 was reasonable. <u>Cf.</u> <u>Archdiocese of Wash.</u>, 897 F.3d at 330 (considering under <u>Mansky</u> whether WMATA, in applying Guideline 12, had "consistently reject[ed] ads that have religious content" or "discriminat[ed] against ads submitted by religious speakers."). And although defendants' treatment of plaintiffs' ads is only one data point of many in the <u>Mansky</u> analysis, it nonetheless falls within the broad definition of relevance.

Plaintiffs do not suggest that a deposition addressing these topics would otherwise subject them to "annoyance, embarrassment, oppression, or undue burden or expense," and therefore the Court does not find "good cause" to enter a protective order as to these subjects. <u>See</u> Fed. R. Civ. P. 26(c)(1).

### 3. Deposition Topic No. 3: Plaintiffs' Discovery Responses

Finally, defendants seek to depose plaintiffs on how they prepared their discovery

responses "including [the] searches conducted, documents collected, and selection of information and documents for production, as well as the location of those documents." Deposition Notice, Yerushalmi Decl. Ex. 5 at 40; see also Defs.' Opp'n at 7. But defendants cite no defect in plaintiffs' interrogatory answers or document productions that might justify such a sweeping inquiry. Cf. Mem. Op. [ECF No. 68], Newman v. Borders, 07-cv-492, at *3 (D.D.C. Oct. 16, 2008) (considering on a motion to compel depositions regarding defendants' search practices whether plaintiff had offered a "specific reason to believe that" documents "once in existence . . . ha[d] never been produced" or cited a general pattern of defendants' misconduct). Unless and until defendants assert some specific inadequacy in plaintiffs' discovery responses, the Court sees no reasonable likelihood that a deposition on this topic—which would primarily probe plaintiffs' thought processes in preparing those responses—would lead to relevant evidence.

The Court is aware, however, that plaintiffs have objected to several of defendants' document requests as irrelevant and that one of those requests concerns a topic on which the Court has now authorized depositions. See Pls' Resp. to First Set of Reqs. for Production of Docs., Yerushalmi Decl. Ex. 4 [ECF No. 56-1] at 29–34. The Court will thus order plaintiffs—to the extent they have not already done so—to turn over all non-privileged responsive materials to defendants' document request No. 7, i.e. "all documents concerning or referring to any contest or competition involving the drawing" featured in plaintiffs' ad submissions to WMATA. See id. at 33. The Court also notes that document requests Nos. 2, 3, and 5 involve topics that this Court has now ruled are outside the scope of discovery on remand. See id. at 30–32. The subjects of defendants' remaining document requests are not squarely addressed by this Court's decision, and the Court will not opine on their relevance here. But to the extent that defendants perceive some defect in plaintiffs' interrogatory answers or document productions, the proper course of action

would be to challenge those responses as inadequate, not to depose plaintiffs on their reasons for providing the responses that they did. Hence, the Court will enter a protective order prohibiting depositions on the third topic.

## Conclusion

Accordingly, the Court will grant plaintiffs' motion for a protective order, as it pertains to deposition topics Nos. 3, 4 and 5, and deny it, as it pertains to topics Nos. 1 and 2. The Court will also order plaintiffs to turn over all non-privileged responsive materials sought by defendants' document request No. 7. A separate order will be issued on this date.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: November 27, 2020